# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SLEP-TONE ENTERTAINMENT CORPORATION, | ) )  No. 14 C 3570 |
| Plaintiff, | ) ) |
| | ) Judge Ronald A. Guzmán |
| v. | ) ) |
| TEDDY O'BRIAN'S, INC., | ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff sues defendant for trademark infringement and unfair competition. Defendant countersues plaintiff for, among other things, a declaration of trademark invalidity (Count I), cancellation of trademarks (Counts III and IV), fraudulent procurement of trademark registration (Count V), violation of the Sherman and Clayton Acts (Count VI), abuse of process (Count VII) and fraud (Count VIII) . The case is before the Court on plaintiff's motion pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss these counterclaims. For the reasons set forth below, the Court grants in part and denies in part the motion.

## Facts

Plaintiff alleges that it owns Trademark Registration No. 4,099,045 for the trademark SOUND CHOICE, and No. 4,099,052 for a display mark consisting of the words "Sound Choice" written diagonally across a measure of sheet music. (*Id.* ¶¶ 11-12.) Plaintiff further alleges that karaoke operators who put on shows at defendant's establishment use 'karaoke accompaniment tracks,' *i.e.*, "recorded accompaniment music, together with graphical displays of the lyrics and other material synchronized to the music," that were duplicates of tracks created by plaintiff. (*Id.* ¶¶ 9,

14-20.)  Plaintiff says that the karaoke operators or the people from whom they obtained the duplicates were not authorized to make, use or procure them, or to use the Sound Choice marks.  (*Id.* ¶¶ 20-23.)  Plaintiff received no fees or royalties for the duplications, and defendant profited from their use in its establishment.  (*Id.* ¶¶ 24-25, 29-31.)

Defendant alleges that plaintiff published for opposition to Trademark Nos. 4,099,052 and 4,099,045 on November 29, 2011, and registered the marks on February 14, 2012.  (Counterclaim ¶¶ 12, 14.)  It further alleges that plaintiff's application for these marks state that plaintiff had been using the marks in connection with karaoke shows since July 21, 2010, though plaintiff had not actually done so.  (*Id.* ¶¶ 13, 15-16.)  Since obtaining the marks, plaintiff has threatened to sue dozens of venues that host karaoke shows unless they buy plaintiff's products, force the karaoke operators they hire to submit to random audits by plaintiff, or hire operators approved by plaintiff.  (*Id.* ¶¶ 20-25.)  Defendant contends that plaintiff's actions violate the Lanham, Sherman, and Clayton Acts and constitute fraud and abuse of process.

## Discussion

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor.  *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009).  "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations" but must contain "enough facts to state a claim for relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Defendant alleges that plaintiff fraudulently procured Trademark Nos. 4,099,052 and 4,099,045 by falsely stating in the applications that plaintiff "had used the mark[s] in conducting

entertainment exhibitions in the nature of karaoke shows[,] and . . . their first use in commerce was on or about July 21, 2010." (Counterclaim ¶¶ 13, 15-18.) Because of this fraud, defendant alleges, the marks are invalid and should be canceled (Counts I, III and IV), and plaintiff is liable for damages under federal and state law (Counts V and VIII). Plaintiff contends that the fraud allegations are squarely refuted by the trademark applications themselves.

Normally, the Court cannot consider matters outside of the complaint on a Rule 12(b)(6) motion to dismiss unless it converts the motion into one for summary judgment. *See* Fed. R. Civ. P. 12(d). There is an exception, however, for matters of public record like trademark applications. *See Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997) ("[A] district court [may] take judicial notice of matters of public record without converting a motion for failure to state a claim into a motion for summary judgment."); *Rockland Expo., Inc. v. Alliance of Auto. Serv. Providers of N.J.*, 894 F. Supp. 2d 288, 301 n.6 (S.D.N.Y 2012) (stating that a "service mark application is part of the USPTO public record"); *see also Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 954 n.27 (Fed. Cir. 1993) (taking judicial notice of a patent because it is "publicly accessible"). The application for the 4,099,045 and 4,099,052 Trademarks state that plaintiff uses the marks in commerce for "[c]onducting entertainment exhibitions in the nature of karaoke shows." (*See* Pl.'s Mot. Dismiss, Ex. 1, Trademark/Service Mark Application, Serial No. 85364555.) Defendant contends that this "use in commerce" assertion is false because plaintiff "has at no time participated [in] or otherwise conducted an entertainment exhibition, specifically a karaoke show." (Counterclaim ¶ 16.)

The Lanham Act defines "use in commerce" as "the bona fide use of a mark in the ordinary course of trade," and states that "a mark shall be deemed to be in use in commerce . . . on services

3

when it is used or displayed in the sale or advertising of services and the services are rendered in commerce . . . and the person rendering the services is engaged in commerce in connection with the services." 15 U.S.C. § 1127. The trademark owner itself does not have to use the mark to satisfy this requirement. Rather, a related company's use of the mark "shall inure to the [owner's] benefit" if the use "is controlled by the [owner] . . . with respect to the nature and quality of the goods or services." 15 U.S.C. § 1055; *see* 15 U.S.C. § 1127 (defining "related company" as "any person whose use of a mark is controlled by the owner of the mark with respect to the nature and quality of the goods or services on or in connection with which the mark is used."). Plaintiff contends it satisfied this requirement by submitting specimens with its applications that are described as "digital photographs of a performance of services by a licensee and showing the mark being displayed during the performance." (*See* Pl.'s Mot. Dismiss, Ex. 1, Trademark/Service Mark Application, Serial No. 85364555); *see also Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1121 (5th Cir. 1991) (holding that a trademark owner's licensee is a related company as long as "the owner maintains adequate control over the quality of goods and services that the licensee sells with the mark"), *aff'd on other grounds*, 505 U.S. 763 (1992); *Letica Corp. v. Sweetheart Cup Co.*, 805 F. Supp. 482, 487 (E.D. Mich. 1992) ("Where a valid license is found to exist, the licensee is a related company.").

However, the USPTO Trademark Examination Manual that was in effect when plaintiff filed this application variously states that if a mark is being used by a related company: (1) "this must be stated in the application or allegation of use"; (2) "th[at] fact[] must be disclosed in the application"; and (3) "the applicant should state in the body of the application that [it] has adopted and is using the mark *through its related company* (or equivalent explanatory wording)." *See*

4

USPTO Trademark Examination Manual, 7th ed. ("TME") §§ 901.05, 1201.03(a) (emphasis original), *available at* http://tess2.uspto.gov/tmdb/tmep_7ed/ (last visited September 11, 2014); *see* Rules of Practice in Trademark Cases, 37 C.F.R. § 2.38(b) ("If the mark is not in fact being used by the [owner] but is being used by one or more related companies . . . such facts must be indicated in the application"). However, the TME also states that the owner need not "give the name of the related-company user" in the application, and that "[t]he USPTO accepts applications by parties who claim to be owners of marks through use by controlled licensees" and "does not inquire about the relationship between the applicant and other parties [, even related companies,] named . . . in the record." *Id.* §§1201.03(a),(b), (f). It is not clear what language "state[s]," "disclose[s]" or "equivalent[ly] expla[ins]" that a mark is being used by a related company, where such language must appear in an application, or whether this record contains all of the information the USPTO reviewed in connection with plaintiff's application. In short, it is impossible, at this point, for the Court to determine conclusively whether plaintiff made a false representation of material fact to the USPTO. Accordingly, plaintiff's assertion that it did not make such a representation is not a basis for dismissing the fraud-based counterclaims.

Alternatively, plaintiff argues that defendant has not pleaded the fraud claims with the specificity required by Rule 9(b). The Court disagrees. Defendant alleges what was misrepresented (the nature of plaintiff's use of the marks), where, when and how the misrepresentation was made (in the July 6, 2011 application by not stating that plaintiff's use was exclusively through licensees), and who made the misrepresentation (plaintiff). (*See* Counterclaim ¶¶ 13, 15-16.) These allegations are sufficient to satisfy Rule 9. *See Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th

Cir. 2007) ("A complaint alleging fraud must provide "the who, what, when, where, and how."") (quotations omitted).

Nonetheless, defendant has not stated a claim for common law fraud. Such a claim requires allegations that plaintiff knowingly made a false statement of material fact, intended defendant to act in reliance on it, and defendant did so and was damaged as a result. *See Connick v Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 591 (Ill. 1996). According to defendant, plaintiff falsely claimed ownership of valid marks to induce defendant to hire karaoke operators affiliated with plaintiff and threatened to sue defendant if it did not. Defendant does not, however, allege that it hired the operators plaintiff favored, and the existence of this suit suggests it did not. Thus, the only damage defendant suffered as a result of the alleged fraud is that it was wrongfully sued. As a matter of Illinois law, however, the filing of a wrongful lawsuit cannot be the basis for a fraud claim. *See Havoco of Am., Ltd. v. Hollobow*, 702 F.2d 643, 647 (7th Cir. 1983) ("Under Illinois law, the only cause of action recognized for the wrongful filing of a lawsuit is one for malicious prosecution or abuse of process." (citing *Lyddon v. Shaw*, 372 N.E.2d 685 (Ill. App. Ct. 1978)). Therefore, the Court grants plaintiff's motion to dismiss the Count VIII fraud claim.

In Count VI, defendant alleges that plaintiff threatens to sue venue owners who continue to use karaoke operators that are not affiliated with plaintiff and/or refuse to hire operators that are so affiliated to "drive up the price of services[,] allowing [plaintiff] to charge additional costs for [its] products and otherwise eliminate the ability of other companies to enter into the karaoke accompaniment track market." (Counterclaim ¶¶ 61-66.) Defendant contends that these allegations state a claim for a per se section 1 Sherman Act claim and section 13(a) Clayton Act claim. Plaintiff argues that they state neither.

Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust . . . , or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1. "A successful claim under [this section] requires proof of three elements: (1) a contract, combination, or conspiracy; (2) a resultant unreasonable restraint of trade in the relevant market; and (3) an accompanying injury." *Denny's Marina, Inc. v. Renfro Prods., Inc.*, 8 F.3d 1217, 1220 (7th Cir. 1993). Defendant does not allege that plaintiff agreed with any other person or entity to restrain trade. Thus, the Sherman Act claim fails. *See Fisher v. City of Berkeley*, 475 U.S. 260, 266-67 (1986) ("Even where a single firm's restraints directly affect prices and have the same economic effect as concerted action might have, there can be no liability under § 1 in the absence of agreement.").

Defendant fares no better with its claim under section 13(a) of the Clayton Act, which bars:

> [A]ny person engaged in commerce, in the course of such commerce, [from] either directly or indirectly, . . . discriminat[ing] in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States . . . , and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them.

15 U.S.C. § 13(a). There are "three categories of competitive injury that may give rise to a [section 13(a)] claim: primary line, secondary line, and tertiary line." *Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 176 (2006). "Primary-line cases entail conduct . . . [like] predatory pricing . . . that injures competition at the level of the discriminating seller and its direct competitors." *Id.* "Secondary-line cases . . . , involve price discrimination that injures competition among the discriminating seller's customers," by creating "favored and disfavored purchasers." *Id.* (quotation omitted). "Tertiary-line cases involve injury to competition at the level of the

7

purchaser's customers." *Id.* Because the counterclaim is devoid of any allegations about plaintiff's pricing practices, defendant has not stated a section 13(a) claim.

Plaintiff also asks the Court to dismiss Count VII, a claim for abuse of process. In Illinois, "[t]he only elements necessary to plead a cause of action for abuse of process are: (1) the existence of an ulterior purpose or motive and (2) some act in the use of legal process not proper in the regular prosecution of the proceedings." *Kumar v. Bornstein*, 820 N.E.2d 1167, 1173 (Ill. App. Ct. 2004) (emphasis omitted). The first element requires defendant to allege that plaintiff "instituted proceedings against [it] for an improper purpose, such as extortion, intimidation, or embarrassment." *Id.* The second requires defendant to allege that process, *i.e.*, "any means used by the court to acquire or to exercise its jurisdiction over a person," *Holiday Magic, Inc. v. Scott*, 282 N.E.2d 452, 456 (Ill. App. Ct. 1972), was "used to accomplish some result beyond the purview of the process or to compel the party against whom it is used to do some collateral thing that [it] could not legally be compelled to do." *Kumar*, 820 N.E.2d at 1175. Filing a suit, even with malicious intent, is not an abuse of process. *Holiday Magic*, 282 N.E.2d at 455-56. Thus, to state a viable claim, defendant must allege that plaintiff improperly used a court's coercive authority to make defendant do something it was not legally required to do. *Compare Exec. Commercial Servs., Ltd. v. Daskalakis*, 393 N.E.2d 1365, 1371 (Ill App. Ct. 1979) (allegations that defendant had plaintiff imprisoned pursuant to a writ of *ne exeat* as a means of "extract[ing] money" from plaintiff's co-defendants who fled the jurisdiction stated a claim), *abrogated on other grounds*, *Cult Awareness Network v. Church of Scientology Int'l*, 685 N.E.2d 1347 (Ill. 1997), *and Shatz v. Paul*, 129 N.E.2d 348, 356-57 (Ill. App. Ct. 1955) (allegations that defendants repeatedly had writs of *capias ad respondendum* issued against plaintiffs to force them "to borrow funds from friends or relatives and . . . pledge their

8

personal credit to payment of [corporate] debts" stated a claim for abuse of process), *with Erlich v. Lopin-Erlich*, 553 N.E.2d 21, 22 (Ill. App. Ct. 1990) (holding that wife's procurement of an *ex parte* order restraining husband from disposing of marital assets "[was] not extraneous to the purpose of the [divorce] proceeding," and thus was not an abuse of process, even if wife made false representations to obtain the order). Defendant does not allege that plaintiff has misused a court's process in any way. Accordingly, the Court grants plaintiff's motion to dismiss Count VIII.

### Conclusion

For the reasons set forth above, the Court grants in part and denies in part plaintiff's motion to dismiss Counts I, and III-VIII of the counterclaim [20]. The motion is granted as to Counts VI-VIII and denied as to Counts I and III-V. Count VIII is dismissed with prejudice. Defendant has fourteen days from the date of this order to amend Counts VI and VII, if it can do so and comply with Rule 11. If defendant fails to file a timely amendment, the Court will dismiss Counts VI and VII with prejudice.

**SO ORDERED.**  **ENTERED:** September 24, 2014

_____
**HON. RONALD A. GUZMAN**
**United States District Judge**