# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SLEP-TONE ENTERTAINMENT CORPORATION, | )<br>)<br>) No. 14 C 3570 |
| Plaintiff, | )<br>)<br>) Judge Ronald A. Guzmán |
| v. | )<br>) |
| TEDDY O'BRIAN'S, INC., | )<br>) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff sues defendant for trademark infringement and unfair competition. Defendant has filed an amended counterclaim for, among other things, violation of the Sherman and Clayton Acts (Count VI). The case is before the Court on plaintiff's motion pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss this amended counterclaim. For the reasons set forth below, the Court grants the motion.

## Facts

Plaintiff is a manufacturer of karaoke accompaniment tracks, *i.e.*, "recorded accompaniment music, together with graphical displays of the lyrics and other material synchronized to the music," used in karaoke shows. (Compl. ¶¶ 1, 18.) Plaintiff alleges that karaoke jockeys ("KJs") who put on shows at defendant's establishment used tracks that were duplicates of those plaintiff created. (*Id.* ¶¶ 2, 9-10, 14-20.) Plaintiff says that the KJs or the people from whom they obtained the duplicates were not authorized to make, use, or procure them. (*Id.* ¶¶ 20-23.) Plaintiff received no fees or royalties for the duplications, and defendant profited from their use in its establishment. (*Id.* ¶¶ 24-25, 29-31.)

Defendant alleges that plaintiff has entered into an agreement with another karaoke track manufacturer, Digitrax, to sue KJs who refuse to work with them or underbid their KJs for work at karaoke venues, and to sue karaoke venues that hire KJs who are not affiliated with them. (Am. Countercl. ¶¶ 61-63, 67-69, 71-73, 76.) These practices, defendant alleges, drive competing karaoke track manufacturers out of the market or keep them from entering it, thereby raising the price karaoke venues must pay for KJ services. (*Id.* ¶¶ 64-67, 70.)

**Discussion**

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations" but must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To state an antitrust claim, defendant must allege, among other things, that it suffered antitrust injury, *i.e.*, an injury the antitrust laws are designed to prevent, and it has antitrust standing,[1] *i.e.*, there is "a direct link between the antitrust violation and the antitrust injury." *Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*, 998 F.2d 391, 395 (7th Cir. 1993) (emphasis omitted); *see* 15 U.S.C. § 15 (creating a cause of action in favor of anyone "who [is] injured in his business or property" by an antitrust violation). Plaintiff argues that both elements are lacking.

---

[1]"Antitrust standing . . . is a distinct concept" from Article III standing. *Sanner v. Bd. of Trade of City of Chi.*, 62 F.3d 918, 926 (7th Cir. 1995)

The injury the antitrust laws are meant to prevent is that suffered by consumers from price fixing or other agreements among producers that restrain trade. *See, e.g.*, 15 U.S.C. §§ 1, 13, 14. Defendant contends that it has satisfied the injury element by alleging that plaintiff and Digitrax have agreed to take action to drive competing track manufacturers out of business, including: (1) pressuring KJs to buy plaintiff's tracks; (2) charging KJs who willingly do so less than those whom they must pressure to do so; (3) suing KJs who refuse to work with them or underbid KJs who are affiliated with them; and (4) coercing karaoke venues to use the KJs plaintiff favors. (Am. Countercl. ¶¶ 61-63, 68-69, 71, 76-81.) As these allegations illustrate, the consumers of plaintiff's products are the KJs, not the venues like defendant. Thus, the amended counterclaim suggests that the KJs, not defendant, suffered an antitrust injury.

It is possible that plaintiff's alleged conduct demonstrably increased the price defendant has to pay for KJ services or makes it impossible for defendant to obtain KJ services at all, though defendant does not specifically allege either. Even if it had, however, defendant would still have to show that it has antitrust standing to pursue Amended Counterclaim VI. *See Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 534 (1983) (stating that "Congress did not intend the antitrust laws to provide a remedy in damages for all injuries that might conceivably be traced to an anti-trust violation"). "'[The] antitrust standing inquiry involves a case-by-case analysis of 'the [defendant's] harm, the alleged wrongdoing by the [plaintiff], and the relationship between them,'" and may entail considering: "(1) [t]he causal connection between the alleged anti-trust violation and the harm to the [defendant]; (2) [i]mproper motive; (3) [w]hether the injury was of a type that Congress sought to redress with the antitrust laws; (4) [t]he directness between the injury and the market restraint; [and] (5) [t]he speculative nature of the damages; (6)

[t]he risk of duplicate recoveries or complex damages apportionment.'" *Sanner v. Bd. of Trade of City of Chi.*, 62 F.3d 918, 927 (7th Cir. 1995) (quoting *Greater Rockford Energy & Tech.*, 998 F.2d at 396; *Lovett v. Gen. Motors Corp.*, 975 F.2d 518, 520 (8th Cir. 1992)).

Plaintiff's alleged motive in this case is to corner the karaoke track manufacturing market, a goal it tries to by achieve by coaxing or coercing KJs into purchasing its tracks and trying to "intimidat[e]" venues into using only KJs affiliated with plaintiff. (*See* Am. Countercl. ¶¶ 62-65, 71, 74, 77-81.) Thus, the KJs, though not the target of the purportedly unlawful activity, are the ones who absorb most of its impact. Any injury defendant may suffer as a result of plaintiff's actions is by virtue of its status as a customer of the customers of plaintiff and its competitors. Any such injury is too speculative and remote from the anticompetitive conduct to confer antitrust standing on defendant. *See Associated General*, 459 U.S. at 527-41 (holding that carpenters' unions who were parties to a collective bargaining agreement with multiemployer association did not have antitrust standing to sue the association for its alleged coercion of certain member-contractors and their property-owner customers to use non-union subcontractors because any harm to the union was "an indirect result of whatever harm may have been suffered" by the contractors and owners).

The Supreme Court's decision in *Blue Shield of Virginia v. McCready*, 457 U.S. 465 (1982) does not dictate a different result. The plaintiff in that case was enrolled in a health plan that provided coverage for mental health services performed by psychiatrists but not for the same services provided by psychologists. *Id.* at 468. Plaintiff sued the insurer, claiming that it colluded with psychiatrists to keep psychologists out of the mental health services market in violation of the antitrust laws. *Id.* at 468-69. The district court held that plaintiff lacked antitrust standing because "the sector of the economy competitively endangered by the charged violation extended no further

4

than that area occupied by the psychologists," and plaintiff's "injury was too indirect and remote to be considered antitrust injury." *Id.* at 470-71 (quotation omitted). The appellate court reversed, and Blue Shield appealed. *Id.* at 471-72.

The Supreme Court acknowledged that antitrust violations send "ripples of harm" through the economy, but said that only people whose injuries are proximately caused by the violations can seek redress under antitrust law. *Id.* at 476-77. The Court concluded that McCready was one of these people because: (1) "[t]he harm to [her] . . . was clearly foreseeable; indeed, it was a necessary step in effecting the ends of the alleged illegal conspiracy," *i.e.*, to keep psychologists out of the mental health services market; (2) she was in the area of the economy "endangered by [the] breakdown of competitive conditions" created by Blue Shield's refusal to reimburse; and (3) she alleged that she was injured as a direct result of Blue Shield's purposeful scheme to keep psychologists out of the health services market, the kind of scheme the antitrust laws were designed to avert. *Id.* at 479-84 (quotation omitted).

Here, it is the KJs, not defendant, whose position is akin to McCready's. Like McCready, the KJs are not the targets of the alleged anticompetitive conduct; they are customers of the targets. Similarly, as in *McCready*, the harm to the KJs is not only foreseeable but an integral step in achieving the allegedly purposeful goal of driving other karaoke track manufacturers out of the market. But the KJs are not pursuing the antitrust claim here. Rather, it is being pursued by their customer, whose injury is too far removed from the unlawful conduct to have standing to sue for it.

## Conclusion

For the reasons set forth above, the Court grants plaintiff's motion to dismiss Count VI of the amended counterclaim [35], which is dismissed with prejudice.

**SO ORDERED.** **ENTERED: January 20, 2015**

_____
**HON. RONALD A. GUZMAN
United States District Judge**